AARON M. CLEFTON (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave. Ste C
#336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALL ACCESS LAW GROUP
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

Attorneys for Plaintiff JAMES ALGER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALGER,           )<br><br>          Plaintiff, )<br>     vs.       )<br>         )<br>LANDMARK MARRIOTT SUITES, )<br>LLC, DBA ANAHEIM MARRIOTT )<br>SUITES; and FIRST )<br>HOSPITALITY, LLC, )<br>         )<br>       Defendants )<br>_____)  | **Case No.** 25-cv-1452<br><br>***Civil Rights***<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

This is a disability civil rights action involving the lack of disabled access to the building, structure, facility, complex, property, land, development, and/or business complex known as "Anaheim Marriott Suites" at 12015 Harbor Blvd., Garden Grove, CA, 92840 ("Hotel") in violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"). JAMES ALGER ("Plaintiff") complains of LANDMARK MARRIOTT SUITES, LLC; and FIRST HOSPITALITY, LLC ("Defendants") as follows:

## INTRODUCTION

1.    Defendants repeatedly denied Plaintiff, a person with a disability who uses a wheelchair or scooter for mobility ("Wheelchair"), full and equal access to the Hotel because of multiple barriers, including, but not limited to inoperable doors, noncompliant loading zone, uneven pavement at disabled parking, not enough disabled parking, an inaccessible room, and chair lifts at the pool and spa (Aquatic Facilities) that were inoperable. Furthermore, despite Defendants' apparent provision of an accessible check-in counter, that counter was blocked with promotional signage, did not have a point of sale reader mounted, and moreover, the staff not only has apparently no policy to direct disabled guests to it, they specifically insist on persons in Wheelchairs, using the non-accessible counter, which created extreme difficulty and embarrassment for Plaintiff as the counter was too high. Plaintiff faced these accessibility barriers personally and repeatedly for several months during each of his paid visits to the Hotel.

2.    On multiple separate occasions, and months apart, Plaintiff used the goods and services of the Hotel, for which they were paid but he did not receive access to the goods and services he paid for.

3.    Defendants' failure to provide accessible features and amenities that are provided to non-disabled guests contravenes the "full and equal" access mandate of Title III of the Americans with Disabilities Act of 1990. Thus, Plaintiff has faced

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

repeated barriers to accessing the full and equal services of the Hotel, leading to experiences of embarrassment and humiliation. Plaintiff seeks injunctive relief to ensure full and equal access. Further, Plaintiff is seeking a declaratory judgment and the reimbursement of reasonable statutory attorney's fees, litigation expenses, and costs, as provided for by federal and state statutes.

<u>**JURISDICTION AND VENUE**</u>

4.      Plaintiff brings this action as a private attorney general pursuant to 42 U.S.C. § 12188 and 28 C.F.R. § 36.501(a), having been personally subjected to discrimination based on his disability. These provisions expressly authorize private individuals to seek injunctive relief to enforce the public rights guaranteed under Title III of the Americans with Disabilities Act.

5.      This Court has subject-matter jurisdiction of this action under 28 U.S.C. § 1331 for violations of the ADA, 42 U.S.C. §§ 12101 *et seq.*

6.      Venue is proper in this court under 28 U.S.C. § 1391(b) and is founded on the fact that the real property that is the subject of this action is in this District and that Plaintiff's causes of action arose in this District.

<u>**PARTIES**</u>

7.      Plaintiff JAMES ALGER ("Plaintiff") is and at all times relevant here was, a qualified individual with a physical disability. Plaintiff suffers from Charcot-Marie-Tooth disease ("CMT"), a disease of the peripheral nerves that control muscles that can cause progressive loss of function and sensation in the hands, arms, legs, and feet. CMT is a form of inherited peripheral neuropathy. A work injury caused this disease to accelerate rapidly. As a result of his disability, Plaintiff has severe difficulty walking, as well as difficulty with fine motor skills. Plaintiff relies on a Wheelchair for most mobility needs and is able to drive a vehicle equipped with hand controls. In an attempt to maintain functionality and get relief from the pain associated with his disability, Plaintiff routinely seeks the

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

use of Aquatic Facilities. Plaintiff has continuously possessed a permanent disabled parking placard issued by the State of California since approximately 1994.

8.     Defendants are and at all relevant times were the owners, operators, lessors, and/or lessees of the subject business, property, and buildings at all times relevant to this Complaint.

9.     Defendants did not make the necessary accommodations to ensure that their facilities, products, and services were accessible to Plaintiff and others with physical disabilities. This non-compliance with federal and state laws on accessibility has directly led to the violations, continuing issues, and harms suffered by Plaintiff, as detailed in this complaint.

10.     Plaintiff is informed and believes, and on such information alleges, that at all times mentioned here, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated here within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the injuries complained of here.  All actions alleged here were done with the knowledge, consent, approval, and ratification of each of Defendants here, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

11.     Plaintiff has been subject to discrimination by Defendants, as the amenities and policies at Hotel do not comply with the requirements of the ADA. Defendants have neglected and persistently declined to ensure full, equal, and independent access to the services, amenities, benefits, and accommodations that are available to individuals without disabilities at Hotel.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

12.     The Hotel and its facilities, including, but not limited to, its entrances/exits, parking, interior paths of travel, transaction counters, restrooms, and pool are each a "public accommodation" and part of a "business establishment," subject to the requirements of § 301(7) of the ADA (42 U.S.C. § 12181(7)).

13.     On information and belief, the Hotel and its facilities have, since January 26, 1993, undergone construction, alterations, structural repairs, and/or additions, subjecting the facility to disabled access requirements of § 303 of the ADA (42 U.S.C. § 12183). Irrespective of Hotel's construction and alteration history, removal of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA.

14.     Plaintiff holds premium memberships in multiple hotel loyalty programs, including Marriott Bonvoy where he currently enjoys his 10th year of Titanium status, the penultimate level of elite status offered by Marriott. Plaintiff often lodges at hotels for a multitude of reasons, with an average of well over 75 stays annually for nearly a decade.[1] Regular water exercises are vital for the Plaintiff's muscle maintenance, and hotels conveniently provide the necessary facilities for such activities. Hence, the availability of Aquatic Facilities is essential for his health and relaxation and a significant criterion, but not the only one, in his hotel selection process due to their importance in his disability management. In choosing a hotel, the Plaintiff prioritizes the presence of Aquatic Facilities along with other considerations such as the cost of accommodation, proximity to electric vehicle charging stations, and the hotel's location relative to his itinerary, among other less tangible criteria such as simply wanting to stay in a new place.

15.     Plaintiff holds annual passes to multiple theme parks and attractions in the

---

[1] For clarity, when averaging total stays over the last eight years, which is as far back as Plaintiff has data, it equals approximately 178 stays per year with one hotel chain alone. His current average in recent years is above 75 stays annually.

vicinity of the subject hotel, including Disneyland where he holds an "Inspire Key" annual pass, Disney's top-tier Magic Key pass, which provides access to both Disneyland Park and Disney's California adventure Park on most days.

16.    On February 20, 2025, Plaintiff had scheduled a trip to visit Disneyland. As has been his long-standing habit for practical, logistical, and increasingly necessary medical needs, Plaintiff routinely will stay at a hotel either the day before his intended visit to Disneyland to wake up for "rope drop"[2] or obtain the "first pickle"[3] or in the evening after a day spent at Disneyland to relax and recuperate before taking what can be in excess of 2 hours spent in traffic en route to his home in Porter Ranch, California, about 54 miles away.

17.    Plaintiff's disability is such that he requires lodging accommodations with standard accessibility features, including roll-in showers, sufficient clearance between furniture, grab bars surrounding the toilet and in the shower, a lowered bed for safe and easy transfer, and other commonly accepted elements of accessible design. He also requires a properly functioning pool or spa lift to safely enter and exit aquatic facilities. Unfortunately, Plaintiff frequently encounters hotels that either lack such lifts altogether or have them in a non-operational state, resulting in frustration, distress, and exclusion from amenities offered to non-disabled guests.

---

[2] "Rope drop" marks the official opening of Disneyland, when hordes of sleep deprived, super fans flood the park entrance at dawn. They are let inside the park before opening and are held back by a rope that is ceremoniously dropped as people rush to the empty lines. Plaintiff, having stayed at a nearby hotel and rolled in fully rested with freshly charged batteries enjoys a distinct tactical advantage.

[3] "First pickle" is an unofficial Disneyland tradition in which a cast member awards the first pickle of the day to one lucky - and arguably unhinged - guest who shows up at an hour when most people are still asleep. Plaintiff considers this a noble pursuit.

18.     Plaintiff also seeks equal opportunity to reserve and enjoy the same types and classes of lodging rooms made available to non-disabled guests.

19.     On February 20, 2025, Plaintiff arrived at the Hotel and observed what appeared to be an obvious loading/unloading/drop off area at the front entrance that unfortunately lacked a compliant access aisle which could have put Plaintiffs safety and well-being in jeopardy. For Wheelchair users like Plaintiff, a properly marked and protected area for loading and unloading is essential for safety and independence to ensure safe transfers between their Wheelchair and the hotel entrance and to prevent obstruction by parked vehicles. The Hotel's failure to provide a protected loading zone area creates substantial hazards for Wheelchair users. Due to the noncompliant nature of the loading area, Plaintiff instead proceeded to a designated disabled parking space in the front of the building that so happened to be available.

20.     Upon checking in, Plaintiff was called to a counter that was inaccessible to him because it was too high. He noted at the time his preference to use the lower counter that, from that position, was just to his left, but apparently that computer was not working. He did note that there did not appear to be any point-of-sale card reader at the otherwise presumably accessible counter. Plaintiff was therefore in a no-win situation. He could not reach the counter he was summoned to without difficulty. But even had the lowered counter been functional, it did not have a card reader.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
7

This photograph is a true and accurate depiction of the conditions Plaintiff encountered upon arrival on February 20, 2025, including being directed to a high-level counter with no accessible alternative in use and an out of reach point-of-sale card reader.

21.   Due to the height, and range of motion limitations due to his disability, Plaintiff was physically unable to reach the point-of-sale card reader, and instead needed to have a third-party provide his credit card and identification credentials.

22.   Plaintiff's profile for Marriott Bonvoy specifically states that he requires a mobility accessible room, and in fact, specifically states that that is a priority.

//

//

//

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

8

**Room Preferences**

♿ **Accessibility**

☑ Mobility Accessible Room, Tub

🛏 **Room Options**

| **Bed Type** | **Room Type** | **Room Location** |
|---|---|---|
| ⦿ King Bed | ○ Non-smoking | ☑ High Floor |
| ○ 2 Double Beds | ○ Smoking | ☐ Low Floor |
| ○ No Preference | ⦿ No Preference | ☐ Near Elevator |
| | | ☐ No Preference |

| **Pillow Type** | **What is Most important?** |
|---|---|
| ○ Foam Pillows | ⦿ Room Type |
| ○ Extra Foam Pillows | ○ Bed Type |

This is a true and correct screenshot of the Marriott Bonvoy profile belonging to Plaintiff demonstrating his preference of a mobility accessible room.

23.    Upon arriving at his room, Plaintiff discovered it was in fact, not an accessible room. This created obvious difficulties and discomfort for Plaintiff who requires things like grab bars at additional space to safely transfer onto a toilet, etc. Given this situation, and being frustrated, but not wanting this to destroy his trip, Plaintiff decided that it was easier to use the facilities at Disneyland and did so when he arrived. Although he experienced difficulty with several barriers inside the room, he was able to make it work for him for such a short stay.

24.    On June 26, 2025, Plaintiff had scheduled a trip to Disneyland for what is commonly known as "Stitch Day".[4] That day he made a reservation at the Anaheim

---

[4] "Stitch day" refers to June 26 (6/26), playfully named after the mischievous blue alien "experiment 626" from Disney's Lilo and Stitch. Fans celebrate the day with

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Marriott suites. At the time of the reservation, he had forgotten the inaccessible conditions at that specific hotel and was not sure whether he had stayed there or not. Regardless, one of the things that made this hotel seem different and attractive to him was the fact that he could specifically select an accessible room with a roll in shower. He reserved that room, received a guaranteed reservation, and then proceeded about his day.

25.    After a day at Disneyland, Plaintiff proceeded to the Hotel. It was not until he pulled in the driveway that he realized that he had been there in February and ran into various accessibility barriers.

26.    Sadly, some of the same barriers that existed in February, resurfaced and unfortunately, it only got worse from there.

27.    Once again, there was no designated disabled markings in the loading zone, except this time the designated disabled spaces that were in the front of the building were all occupied. The one designated accessible space on the side of the building had uneven ground and potholes which is a hazard to Plaintiff when using his Wheelchair, so Plaintiff proceeded to the rear entrance of the building. There he found no accessible parking whatsoever, despite there being what appeared to be an excess of 150 parking spaces. He was forced to park some distance from the door so that he had enough space on either side to transfer out of his vehicle into his Wheelchair.

28.    Plaintiff was forced to traverse active driving lanes at the Hotel parking lot without any accessible or protected pedestrian path, placing him at serious risk, particularly given that as a wheelchair user he sits below the high level of many vehicles.

---

themed merchandise, meet and greets, and general mayhem in honor of Stitch, the galaxy's most lovable troublemaker.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

29.     At the rear entrance, Plaintiff encountered an automatic door actuator marked with the international symbol of accessibility. However, the button failed to activate the door, require a third-party to let him into the building.

30.     To verify if the door was working or not, Plaintiff, then attempted to open the door from the inside of the building, pressing the square button mounted on the wall. Once again, it did not work.



Picture is a true and accurate representation of the plaintiff, pushing the automatic door actuator, and that actuator not functioning on June 26, 2025.

31.     Upon proceeding inside towards the check-in counter, Plaintiff noticed that the designated accessible lowered portion of the counter was blocked with some type of promotional signage that had been placed on it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



This photo taken on June 26th 2025 is a true and accurate depiction of the designated accessible counter blocked with some type of promotional material and other items, and not having any computer to check in guests or point-of-sale devices mounted to it.

32.    Not only did the counter fail to include any signage, symbols, or indicators to welcome or inform disabled guests that it was intended for accessible use, but it was also physically obstructed in a manner that clearly discouraged, if not outright prevented, its use by individuals with mobility impairments such as Plaintiff.

33.    Plaintiff positioned himself at the central junction of the L-shaped counter area, allowing clear visibility of both the standard height, and the presumably accessible lower height sections. Despite his visible mobility limitations, and the

availability of a presumably accessible counter nearby, staff nevertheless insisted he come to the elevated portion of the counter, thereby creating an avoidable barrier to equal service through their actions.



This photo taken on June 26, 2025 fairly and accurately depicts the front desk worker gesturing for the plaintiff to come over to the inaccessibly high counter, despite being wheelchair bound.

34.     This situation once again placed Plaintiff in a position where he was unable to see the front desk staff member at all due to the excessive height of the counter, making any face-to-face interaction impossible. He could not view or access the credit card reader, nor could he review any documents, being presented to him. Despite the clear visibility of Plaintiff's mobility device and physical limitations, no effort whatsoever was made by the staff to direct him to the nearby accessible counter. As a result, Plaintiff was forced to handover his credit card and identification to a third-party or cause a scene in front of other guests, by demanding access to the lower counter, which, inexplicably, was not equipped with the payment terminal or any functional check-in capacity. This episode underscores not just a lack of awareness, but a systematic failure in policy, training, or both.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



This picture taken on June 26, 2025 is a fair and accurate depiction of the Plaintiff's view from his Wheelchair after being compelled to use an inaccessible high counter during check-in.

19
20   35.    Upon arriving at his suite, Plaintiff initially believed he had been assigned an
21   accessible room, as it featured a lowered peephole at eye level for a person in
22   scooter or wheelchair in the entry door—an element commonly associated with
23   accessible guest room design. Once he got inside, however, Plaintiff quickly
24   realized that this was not an accessible room. There were no grab bars in the
25   bathroom, there was no roll-in shower as he had been guaranteed, and the room
26   was limited by furniture.
27

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22






These photographs, fairly and accurately represent the condition of the room assigned to plaintiff on June 26, 2025.

23
24
25
26
27

36.    Sometime after checking in, Plaintiff, who was experiencing significant soreness in his back following a day navigating Disneyland in a mobility device, decided to visit the hotel's Aquatic Facilities with the hope of using the

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

spa/whirlpool to alleviate his discomfort. Initially, he was concerned that he may have missed the opportunity, as it was already after 10:00 PM. To his relief, upon reviewing the posted signage and facility rules, he learned that the Aquatic Facilities remained open until 11:00 PM. This gave him a narrow but sufficient window to attempt some therapeutic muscle relaxation and engage in a few light mobility exercises, which are an important and recurring part of his physical health routine during travel.

37.     Upon arriving at the Aquatic Facilities, Plaintiff found both the spa lift and pool lift nonfunctional due to a missing battery—a scenario he has encountered all too often. Recognizing the futility of seeking assistance just before closing, he returned to his room, frustrated and excluded. This recurring failure to maintain required accessibility features reflects not mere oversight, but a systemic disregard for the rights of disabled guests.



These two photos taken on June 26, 2025 fairly and accurately depict the condition of the pool and jacuzzi/spa lifts faced by the Plaintiff.

38.     These individual barriers to access are listed without prejudice to Plaintiff

citing additional barriers to access after inspection by Plaintiff's access consultant, per the 9th Circuit's standing standards under *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008), *Chapman v. Pier One Imports (USA), Inc.,* 631 F.3d 939 (9th Cir. 2011).

39.     Plaintiff has every intention of returning to the Anaheim area and to Disneyland specifically, a location he frequents often and to which he maintains annual access credentials. However, as a direct result of the barriers encountered during his most recent stay, Plaintiff is presently deterred from returning to this particular hotel and will remain so unless and until he is informed that the property has been brought into compliance with the ADA. In fact, he has already been specifically deterred on one occasion, June 28, 2025, where he was forced to stay at a nearby hotel as a direct result of being aware of the barriers at the Hotel. Upon receiving such notice, Plaintiff fully intends to return, as the Hotel's location and amenities are exactly the type he seeks out when selecting accommodations in the area.

40.     Plaintiff alleges that it would be a futile gesture to provide notices of violations relating to his continued or attempted visits, which are certain to occur regularly following the filing of this Complaint. Therefore, Plaintiff will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

41.     Defendants were aware or reasonably should have been aware, that certain aspects of their establishment and their policies made the Hotel inaccessible, constituting a violation of state and federal laws and hindering or denying access to individuals with mobility impairments. Based on available information, it is believed that Defendants possess the necessary financial means to eliminate these obstacles and make the Hotel accessible to people with physical disabilities. But Defendants have not taken action to remove these barriers or to ensure full and

1    equal access to the facility.

2    42.    Because of Defendants' conduct, including their omissions and their failure

3    to ensure access for the disabled, Plaintiff has experienced a violation of his civil

4    rights, emotional distress, and infringement of his right to full and equal enjoyment

5    of public facilities. Each instance of denied access has subjected Plaintiff to

6    difficulties, discomfort, and humiliation. Plaintiff has thus had to seek legal

7    counsel and is now claiming statutory attorney's fees, litigation expenses, and

8    costs, as provided for under federal and state law.

9    43.    Plaintiff's goal in this suit to make the Hotel fully accessible to persons with

10    similar mobility disabilities.

**CLAIM:**

**VIOLATION OF THE ADA, TITLE III**

**[42 U.S.C. §§ 12101 et seq.]**

14    44.    Plaintiff repleads and incorporates by reference, as if fully set forth

15    hereafter, the allegations contained in all paragraphs of this Complaint and

16    incorporates them here as if separately repled.

17    45.    Plaintiff was at all times relevant here a qualified individual with a disability

18    as defined by the ADA, as he has impairments that substantially limit one or more

19    major life activities.

20    46.    Plaintiff has reasonable grounds for believing he will be subjected to

21    discrimination each time he may attempt to access and use the subject facilities.

22    47.    The subject property and facility are among the "private entities," which are

23    considered "public accommodations" for purposes of Title III of the ADA. 42

24    U.S.C. § 12181(7).

25    48.    The acts and omissions of Defendants set forth here were in violation of

26    Plaintiff's rights under the ADA and the regulations promulgated under it, 28

27    C.F.R. Part 36, *et seq.* For example, Section 242.2 of the 2010 ADA Standards for

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

18

Accessible Designs provides "242.2 Swimming Pools. At least two accessible means of entry shall be provided for swimming pools. Accessible means of entry shall be swimming pool lifts complying with 1009.2; sloped entries complying with 1009.3." Defendants have violated this regulation.

49.     Plaintiff alleges on information and belief that the Hotel was designed and constructed (or both) after January 26, 1993 -- independently triggering access requirements under Title III of the ADA.

50.     Here, Defendants violated the ADA by designing or constructing (or both) the Hotel in a manner that did not comply with federal disability access standards even though it was practicable to do so.

51.      The removal of each of the barriers complained of by Plaintiff were at all times here mentioned "readily achievable" under the standards §§12181 and 12182 of the ADA.

52.     Defendants have discriminated against Plaintiff in violation of Title III of the ADA by: (a) providing benefits that are unequal to that afforded to people without disabilities; (b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations of the Hotel to individuals with disabilities; (c) failing to remove architectural barriers in existing facilities where such removal is readily achievable; and (d) where Defendants can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations of the Hotel available through alternative methods if such methods are readily achievable. On information and belief, as of the date of Plaintiff's most recent visit to the Hotel and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to Plaintiff and to other similarly mobility

disabled persons in other respects, which violate Plaintiff's rights to full and equal access and which discriminate against him on the basis of his disability, thus wrongfully denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of §§ 12182 and 12183 of the ADA. Ensuring safe entry and exit from the Hotel, along with genuinely accessible parking, designated paths of travel, loading zones, accessible counters, as well as an accessible swimming pool, whirlpool, and rooms, is a fundamental necessity. Without this ability, Plaintiff is unable to avail himself of the goods and services offered at the Hotel on a full and equal basis. Therefore, the benefits of creating access, including, but not limited to, providing access to the pool/whirlpool, does not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a public accommodation. It is thus readily achievable to remove these barriers. Furthermore, these are the types of barriers identified by the Department of Justice as presumably readily achievable to remove, and, in fact, these barriers are readily achievable to remove.

53.    Under the ADA, 42 U.S.C. 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as he is being subjected to discrimination based on disability in violation of the ADA or has reasonable grounds for believing that he is about to be subjected to discrimination.

54.    Plaintiff seeks relief under remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), and under Federal Regulations adopted.

//

//

WHEREFORE, Plaintiff requests relief as outlined below.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

20

**PRAYER FOR RELIEF:**

1.      Plaintiff has no adequate remedy at law to redress the wrongs suffered as explained in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendants as alleged here, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

2.      Plaintiff requests a declaratory judgment that Defendants' actions, omissions, and failures—including but limited to: failing to remove known architectural barriers at the Hotel to make it "accessible to and useable by" mobility disabled persons; failing to construct and/or alter the Hotel in compliance with federal access standards, and failing to make reasonable modifications in policy and practice for Plaintiff and other persons with similar mobility disabilities.

3.      Plaintiff requests that the Court issue an order enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:[5]

        a.   From continuing the unlawful acts, conditions, and practices described in this Complaint;

        b.    To provide reasonable accommodation for persons with disabilities in all its programs, services, and activities at Hotel;

        c.   To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at the Facilities;

---

[5] Plaintiff does not seek injunctive relief under Cal. Civil Code section 55.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

21

d.  To modify the above-described facilities to provide full and equal access to persons with mobility disabilities, including, without limitation, the removal of all barriers to access where "readily achievable"

e.  To maintain such accessible facilities once they are provided;

f.  To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons at the Facilities; and

g.  To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities at the Facilities.

4.    Plaintiff requests that the Court retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of here no longer occur, and cannot recur;

5.    Plaintiff requests all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by ADA, 42 U.S.C. § 12205; and

6.    Plaintiff requests any other relief that this Court may deem just and proper.


Date: July 3, 2025                                CLEFTON DISABILITY LAW
                                                 ALLACCESS LAW GROUP


                                                  _/s/ Irakli Karbelashvili_
                                                 By IRAKLI KARBELASHVILI, Esq.
                                                 Attorney for Plaintiff
                                                 JAMES ALGER

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

22